at all. The argument is not held for 15 minutes for the time. Mr. Davis of the appellant, you have the floor. If it pleases the court, Hugh Davis for the plaintiff. When I took this case, it did not look like a complicated legal issue coming in. It looked like a mere conflict of testimony that would have to be resolved in the ordinary fashion, but the district court opinion in this case has expanded the envelope of Scott v. Harris further than the Supreme Court has. The standard is that in order to disregard testimony by the plaintiff and construe the facts most favorably to him for the purposes of summary judgment, the evidence must blatantly contradict. Scott didn't address the question of partial contradictions, but this court did in Marvin v. Taylor, and there has been a consistent line of cases since that time in which this court hasn't deviated from that particular parsing of Scott v. Harris. This case is the most blatant one that I know of in Sixth Circuit jurisprudence in that the critical event doesn't appear on tape at all. Everybody admits that the contradictions occurred during the booking or during the investigatory process in front of the scout car. Of necessity, the putting in to the scout car of these interested plaintiff wasn't and couldn't have been so recorded. Of note, of course, is that the plaintiff never resisted and was always compliant with the process. And there's never been a question that the plaintiff ever did anything to deserve any rough handling before or after handcuffing. If so facto, any use of force which could result in a one-inch rotator cuff tear had to have been gratuitous, and the defendants themselves eliminate the potential that it was an accident by alleging that they didn't even touch him or Joves didn't even touch him. Putting him into the car. To me, if there's an incredible piece of testimony in the case, that's it. Every single police officer I've ever seen and every training photo, everything says when you have the person in your control and they have to get into the police car while handcuffed, you assist them, guide them, make sure that nothing happens during that process. And here Chief Joves has said, no, I didn't touch him at all. He got in by himself. Therefore, it couldn't have been an accident. Therefore, it couldn't have been a slip. It couldn't have been a fall. The police don't support that in any of their reports. And therefore, it had to have been a gratuitous use of force. Well, let's take it this way, counsel. Let's assume that Joves is not telling the truth, that he did touch him in some way. But I tried to read the deposition very carefully about whether your client alleged that the pulling of the arms behind him was in any way gratuitous or malicious as opposed to simply being part of putting him in the car. And I couldn't find a place where he says, you know, he yanked because he was mean. At best, he says, I handcuff a lot of people, and then it almost peters off. He doesn't say, and I never hurt them. What would you point to in his deposition that is the best thing where he alleges malice or intentionality? Well, may I answer it in two parts? First part, Fourth Amendment is an object of standard. The state of mind of Joves simply isn't relevant to the analysis. He's an experienced police officer. He's dealing with a person that is intoxicated. He's a Mr. Toner is a big man. He's a skilled tradesman and a farmer and an ex-MP, and he had a big hat on his head from working out all day. Somehow or another, he had to get in that car. The only way he could do it was being guided and pulled up. That's what he said happened. Suppose it was reckless disregard rather than intentional injury. That still satisfies the standard. A rotator cuff is not a small injury. It doesn't happen willy-nilly, and therefore the yanking up, which Mr. Toner clearly testifies to, satisfies, in my view, the evidentiary burden that he has in that regard. He can't possibly know what was in Chief Joves's mind. The existence of the rotator cuff injury is sufficient evidence of an objective use of excessive force, in your view. After a prisoner has been handcuffed and subdued under those circumstances, yes, in my view, it can't have happened inadvertently or accidentally. There had to have been an intentional act which set in force the motion, and that act was unnecessary and gratuitous. Well, you know, I'm looking at page 8 of the district court's opinion. He says plaintiff went to see a doctor about pain in his shoulder about a week after his arrest. Yes. And then according to Dr. what, Manaman? McManaman. There is no way of knowing what caused the injury. That's right. So we don't even know that it was the alleged event here. It could have been his lifting of heavy objects and all this other stuff. Well, one, Mr. Toner knows when his arm popped. He had worked all day doing heavy labor. The first letter, for some reason or another, McManaman being honest and conservative is being held against him and Mr. Toner because at the time that he wrote that letter, it was in 2011. Mr. Toner's heart condition did not allow the surgery to repair the rupture until 2012. Dr. McManaman wrote that letter three weeks after the surgery when he had been able to see the nature, length, and substantiality of the tear. Interviewed the client, reviewed his records, and wrote the letter saying, I believe it was as a result of the incident. Well, you know, one of the things that your plaintiff's claim is that he was in extreme pain at the very moment that Joe allegedly yanked his arm. That's right. And yet the district court says plaintiff's breathing is audible and he can be heard talking to himself. So there was no cry that the audio part of the squad car was operating. That's right. There's no evidence at all of any grunts or pain or oh, you're hurting me or ooh, that hurt or anything like that. Is there on the audio? Well, the question is whether or not, and if you've done as many police cases as I have, there's all kinds of situations at the medical or in the interaction where either people complain loudly from the beginning or they don't. They might be scared. They might be intimidated. They might have a higher tolerance for pain. Mr. Toner is a very strong man. Usually if you're in immediate intense pain, extreme pain at the very moment of the yank, don't you normally say at least ow, or that hurts? Well, if it's a medical conclusion that every person who gets hurt must make an audible sound at the time that that hurting occurs, then it's a new concept to me. The question is if something happens enough to cause the injury to cause the hurt, is it within the realm of reasonableness for a jury to accept Mr. Toner's testimony? No, I didn't cry out in pain. And no, I didn't complain because I know these guys. I live in this little small part of the northern tip of the thumb of Michigan. My family's been here for generations. I didn't have anything to say to these guys. I just wanted to get out of jail and go to the hospital. And when did he actually go to the hospital? He made an appointment with his doctor the day he got out. He got an appointment within a week for sure, maybe a little bit faster than that. His ordinary physician, Lockhart, referred him immediately to McManaman, the specialist. In the interim, he had the MRI, which was recommended by Lockhart. The MRI showed the rupture, and he went in to see McManaman as soon as possible. There was no delay in seeking a medical treatment. Counsel, did you save any time for rebuttal? I did, Your Honor. Okay, thank you. Thank you. Good morning, Your Honor. Gus Morris on behalf of Chief Scott Jobes from the village of Elkton. My view of this case is, last night in reviewing the plaintiff's deposition, that even if you view what it is the plaintiff said the chief did and assume it all to be true, I don't see how that even rises to the level of excessive force. Certainly, because part of the judge's decision below was that there was qualified immunity as well, I don't see anywhere in the record where it's been established that what the plaintiff said the chief did amounts to clearly established excessive force. And let me run through, because I jotted down some deposition pages last night when I was reading through it. What the plaintiff said the chief did was, first of all, put his cuffs on too tightly, and we can clearly hear from the audio that the chief asked him if he could loosen it, and he did. The chief, in fact, loosened the cuffs. That's page 124. The plaintiff then says the chief banged my head on the door and knocked off my hat, but the plaintiff goes on to testify at page 145, I'm not holding the chief accountable for banging my head, I'm not alleging excessive force because of it, and I'm not claiming any damages or injuries because he banged my head. And the third thing was the chief lifted up on my cuffs to put me off balance, to get me in the car. He didn't describe a gratuitous jerk of the cuffs. What the plaintiff describes in his deposition is a method by which this admittedly large man could be, in his words, tilted him over, page 140 of the plaintiff's step, tilted him over to help him get in the car. And even for the sake of discussion, assuming that caused an injury, not every injury means that there was excessive force. Just like you can have excessive force without an injury, you can have an injury without the force being excessive. And if all this chief did was lift his cuffs up, not to injure him, but to tilt him over so he could get him in the car, in my judgment, that's not clearly established as being excessive force at all. And that's all the plaintiff said. The last thing he says, 141, then he pushed him into the car, onto the seat, and then goes on to say that he never punched me, he never kicked me, he never struck me in any fashion. To me, as a matter of law, this does not describe something that's clearly established as excessive force. Counsel, your adversary notes that Chief Jobes says he didn't touch him or he states that he didn't touch him at all to get him into the car. Yes. What's your view of that contradiction? I don't think it's consequential for our argument because I have to assume what the plaintiff says is true when I make my summary judgment argument, as I think does the district court below. So even if there's some contradiction between the testimony about what the chief said he did and what the plaintiff said he did, I'm assuming for the purposes of our legal argument, everything the plaintiff said the chief did is true. That's a matter that would be taken up with the judge. There's some additional testimony at 146, 147 and thereabouts about what do you think caused the shoulder to pop when he picked my weight up and got me off balance. He popped that shoulder. Is that inconsistent with anything else? Well, I don't think that, again, he's describing it in a fashion where it's being tilted over by the chief, as I said earlier. So you would say that's consistent with what you were describing at 141? 140, yeah, 140. I said tilted him over and he was not off the ground. I would say that that's consistent. All right. Obviously the legal issue that is part of this appeal is the scope of Scott v. Harris as well. We've all read the decision. We all know what it means where the plaintiff's version of events is blatantly contradicted by the record. The court, for summary judgment purposes, can disregard the plaintiff's testimony with respect to what happened. Judge Ludington focused in on that 23 seconds of audio, which is uninterrupted and can clearly be heard on the recording. I'm sure you've all listened to. And when you look at the plaintiff's complaint and compare that, again, with his testimony, with what you hear on the video, it's so obvious that what the plaintiff said happened didn't happen in any way. Although, I would say now we're focusing just on the shoulder, because really the hat and the head, you know, that sort of seems like it pretty well passed away. Yes, yes. My question is this. There's certainly a contradiction or a potential contradiction between being in extreme pain and not crying out and so forth. Although they have some explanation for that. But he never says, I cried out. If he says, I cried out, and the audio is silent, that would be a direct contradiction. Agreed. But here what you've got is some ambiguous, at best, sounds, whether the grunt is consistent with pain or not. But would you really say that's a blatant contradiction? It's just saying that it leaves it where it was before that he says, I'm a tough guy. I didn't cry out in pain, because he never says he did, right? That's correct. He didn't testify he cried out in pain. I don't think he was asked that question at the deposition, but yes. But I think there was some testimony that what happened was audible, because he says he heard a pop. And that's something that's certainly not recorded on the audio. He might not hear that. Possible. I obviously have to concede that. But that was just some suggestion of audio. But that he was in extreme pain, when you hear the chief asking him a question or explain to him, it's a tight fit. If you slide your body around this way, you'll fit back in the seat a little more comfortably. And the plaintiff responding to those kind of questions with an OK or a K, to me that is a blatant contradiction, even if there is no cry out of pain. Because if you have just suffered a torn rotator cuff, an injury that those who are familiar with, you know when you have it. It hurts. It causes you pain immediately. And for him to be responding in a calm and rational fashion to the chief's pleasant, there's no other way to describe him, instructions to get into the back of the car, and for you to respond with OK, it just, again, it defies any rational try or effect to conclude that this man had just suffered a traumatic injury, a torn rotator cuff, when he's talking and responding to the questions for the chief in a fashion that can only be described as amicable. To me, it's not that close of a question when you consider it in the large picture. Because isn't the whole point of Scott v. Harris what a reasonable jury could find under the circumstances? Could any reasonable jury listening to that recording, that audio recording, conclude that this chief used excessive force? And I think the answer to that question is no, because it would cause you to disregard completely what you're hearing in this recording. And I think, too, in addition to that, we all looked at Judge Ludington's decision. He also alludes to more than just the recording to arrive at his conclusion that no rational try or effect could find excessive force. He looked at the lack of a complaint of injury at the jail when the corrections officers are asking him whether or not he has any medical condition, made no complaint whatsoever. When you look at the doctor's initial letter or explanation about what it is he saw and saying he has no way of knowing what caused the injury, my only interest is to treat the shoulder, and then you combine that with the deputy's testimony, the deputy who was on scene that the plaintiff didn't acknowledge was on scene, but who described what essentially was just an innocuous placement of an OUIL suspect in the back of a car that shocked him to think that there was litigation with respect to that. When you combine, as Judge Ludington did, all of those things that were part of the record below, including the video and audio, no rational try or effect could come to a conclusion that excessive force was used by Chief Jobes with all of that evidence in there. With respect to the injury itself, you have to understand that in the record below there was no evidence that the plaintiff put forward of causation. Of course, one of the elements of the 1983 claim is causation. There was no evidence. There was no testimony. Even if you look at the letter that was delivered after the motion for reconsideration was brought or in conjunction with that motion, even that in and of itself doesn't arrive at a conclusion that there was causal relationship. It says it was temporal. Obviously, the plaintiff himself— What's the key part of the letter that you rely on? I think the word was secondary. The subsequent letter, Judge, the later one, yeah, that the doctor says that the injury was, quote, secondary, close quote, to the event of the arrest, and that was the doctor's letter. Isn't that kind of medical ease where it came from? But he—well, yes, obviously that's what the doctor meant by secondary. But what I'm meaning to say is that there's no evidence of a causal effect by the doctor. What he's saying is that assuming the history of the plaintiff, the temporal explanation, the time conjunction when he started to complain about this injury. I mean, it clearly doesn't say whether it was malicious or why it happened, whether it was negligent or whatever. Right. Doesn't it pretty clearly say that at least at that time, four years later or so, he says it came from that event? Well, yes. I guess that's what he's saying at this point in time when he's talking about the plaintiff's history. But, again, you know, obviously for cross-examination purposes, he was lifting bales of wheat or hay. You sort of have to accept it at this stage, don't you? I agree. I agree with that. It's a separate question about how much weight it has when it's on reconsideration. Exactly. But that's a separate issue. Exactly. I think Judge Ludington addressed that. But, again, you know, I think the contradiction is a strong argument, but even the plaintiff's own description of the force that was used is not clearly established, I don't think, in this circuit, as being excessive force. And just, I mean, if he had described an event, and I've had cases with Mr. Davis before, and we've all heard the testimony from the plaintiffs when they describe what it is the officer did to me. When he ratcheted it up, you hear all kinds of verbs utilized to describe what the officer did that caused the suspect to be injured after he was handcuffed by the jerking or the pulling or the ratcheting or reefing up. I've heard all kinds of verbs used by plaintiffs. Here, this plaintiff, all he said was he tilted me over and put me off balance so I could get in the car. Well, he does use the word yanked at one point, doesn't he? Yanked or jerked. Ah, boy, I didn't see it last night. I might have missed it, Judge. I had around page 140. It may be that's only from reefing, but I thought there was one point where he did use, or obviously we can go back. Yeah, I was looking at page 140, Judge, when I was describing, and if you look at 139, he just picked me up off balance. Okay, so picked me up. Yeah, and tilt me over. That's page 140, tilt me over. And then he says off balance again on 140. I think on page 7 of the summary of argument of the plaintiff, he uses the word that he felt and believed he heard a pop at the moment Joe yanked his arm. Yeah, right. That's counsel statement. Right, I don't believe the verb yanked was used anywhere at the plaintiff's deposition. That's all I have, Judges, if you have any questions. All right, thank you. Case will be submitted. All right. Okay, you may not have heard me when I asked. Okay, I'm sorry. I'm sorry, Judge. I thought it was a little short, so I wanted to make sure you got your time. Go ahead. Well, that's one of the things I can't tell you about too much of what's on the audio part of the tape. I only know what I've been told. Okay, go ahead. With regard to causation, I'll take these arguments in reverse order. With regard to causation, it appears to me that the main conflict is that plaintiff says Meyer v. Walmart is the rule in the controlling case and the one most applicable to the facts of this case in the Sixth Circuit. And the defendant says Hassler versus United States. And in my view, they stretch the interpretation of that case. But that's where causation comes down and to find or to rule lack of causation as a matter of law under circumstances like this with a supporting doctor's opinion and a guy who works in a factory every day and had up until that time for years, he knows when he got hurt and he knows how he got hurt. And the doctor says that's how he got hurt. With regard to my client's compliance, if you will, with Jobes, it's hard for me to understand the argument about how he's worse off for being more cooperative. He is a former law enforcement officer. He has total respect for police. It's one of the reasons that he's so engaged in what happened to him because he knows he didn't do anything that could passively justify this. And a lot of my client acted calmly, yes. I don't know how to say it any better than that. I think that you've gotten past the question of whether or not there has to be a total or a partial showing of inherent dishonesty or incredibility. But it seems to me that here the judge not only decided facts that weren't shown on the video but used the facts that were on the video to make that determination and in that regard just simply shifted the burden. And we know that that shouldn't be permissible. What's the best thing for this court? This is one of the few places in the United States where we aren't under video surveillance and who knows how long that will last. But every case that I see these days has video in it someplace. Sometimes allegations of improper spoilation. Sometimes arguments of tampering. Lots of times arguments of different kinds of interpretation. This really is the top of a slippery slope. It may well be that by opening up the process to the kind of decision that the district court made in this case will make for less trials. It won't make for less appeals. And it won't make for the never-ending struggle to hold back. And therefore it seems to me the court has drawn a very clear line in the sand. If it doesn't completely contradict or, as Scott said, blatantly contradict, then it's a matter of fact. Even down to the ruling you made in Green v. Throckmorton where you declined to agree that the plaintiffs' aisles were dilated because it couldn't be shown. And therefore it just seems to me draw the line and not. Counsel, let me ask you about your statement earlier that it's an objective test about excessive force. Is there no subjective element? I mean, if you slap a man in the face, that would be excessive force. But if the reason you slapped him is you didn't know he was right behind you and you just swung your arm, it would not be a Fourth Amendment violation. I'll agree to that. But it seems to me that that's not this case. The person was in control. He was involved in a process which required him to manipulate the individual. And he acted in such a way that he caused an injury which couldn't be de minimis and couldn't be the result of unintentional activity. That's my argument. Okay. Thank you, counsel. The case will be submitted. Berkley, call the next case.